Good morning, your honors. My name is Robert Gombiner and I represent the appellant James Postlethwaite. I'd like to reserve two minutes for rebuttal. Mr. Postlethwaite explained why he was invoking his right to an attorney. That explanation was entitled to exactly the same protections as the invocation of the right itself. I think we need to back up. Did you make this argument to the district court below? Well, I was not... It doesn't matter. Let me just ask you, let me rephrase it then. Was it made to the district court below? Well, the answer is... It's either... No, but... Okay, yes or no, so it's no. It was a big but. Okay. What happened was that defense counsel moved to suppress the statements. And the counsel's position, which you can find in Supplemental Excerpt of Record 16, was that Mr. Postlethwaite had been confronted with some of the evidence against him, advised of his rights, invoked his right to counsel, and then the defense position was that the agent continued to interrogate him, said something about, let's come clean. And the defense asked for a hearing on this. The government's response was that there were statements made, but the government suggested that those statements fell under the ambit of Rhode Island versus Innis, which is, of course, when you are advised of your rights, and then at some subsequent time, not in response to interrogation, make a statement. There was a hearing. At the hearing, Agent Beard testified. He was the government's only witness. Agent Beard specifically testified, this is on Excerpt of Record 52, that he advised, he gave Mr. Postlethwaite his Miranda rights. Then he started, said, don't say anything, I'm going to tell you about the case. He talked to him about the case. And then Mr. Postlethwaite, at that point, indicated that he thought he should have an attorney. And then Agent Beard testified that in response to that, I'm just quoting here, what did you do in response to that? Answer, I didn't answer, I didn't ask him more questions, other than when he thought he should have his attorney, I just said for clarification, I will not ask you any further questions, but does that mean you do want an attorney? And he indicated in a way that he did want an attorney. And did he say anything at that point? He did. Immediately he stated, if he talks, his son is dead. And then he stated he doesn't know his name. I really don't think you responded to Judge McGee's question. Well, I am trying to. But you have really limited. I understand, Your Honor. Let me ask you, you're aware of Rule 12? Yes. And U.S. v. Bush he had. Yes. Respond to that. I mean, did you ever make the argument that you're making here on appeal? And what authority do you have that we could consider? I mean, the whole idea is that you're supposed to let the district court rule on all of your arguments. If you don't, we really don't have an ability to review your argument. Your Honor, there's a couple of responses to that. First, Judge Kuhnhauer heard all the testimony and then ---- That's not my question. I understand. Was it argued? No. It was not. The Bush he had was not argued. Okay. How do we get around that? Well, you get around it in a couple of ways. First, the court, and I cited this case, Flores-Montano. The court may still consider an argument, even if it wasn't raised at all, if it's just purely a legal argument, which this is, because there's no dispute whatsoever about the facts. Second, the court can still consider the argument under the plain error doctrine. And Flores-Montano and other cases also say that. Third, I would suggest that this is not a new claim. This is a new argument in support of the same claim, which is that the statements should not have been admitted. And there's a case called the Polaris-Gallon and other cases that say that, and the Supreme Court, in fact, has said this, that the waiver or forfeiture problem goes to when new claims are raised rather than new arguments in support of the claim. I assume we don't agree with you on that. Is there anything in the record that would suggest good cause for not making the specific argument that it was protected? Yes, there is, and that is that at the conclusion of the evidentiary hearing, the district court did not ask for any post-hearing briefing and did not ask for any oral argument on what had just occurred at the evidentiary hearing. Instead, he just said, I'll get an order to you within about a week. So it wasn't a situation where the defense had all the facts that were established at the hearing and then was given the opportunity to submit a further brief. The district court simply issued an opinion in which the court thoroughly analyzed the testimony and found and analyzed exactly what had happened at the hearing and found that Mr. Postlewaite had made statements that, in explanation of his right to counsel, but the court then simply found that those statements were admissible under Rhode Island v. Innis, which is just simply wrong because they... He never had the benefit of any argument or briefing to rule in any other way. Here's the three grounds for suppression that was offered by your client below was that he was in custody as soon as he was detained and he should be given his Miranda warnings. The officials deliberately withheld Miranda warnings at first and only gave the warnings later in violation of Missouri v. Seabird. And then the third one was that his Miranda waiver was involuntary because of the length of time he was detained. But nowhere, from what I can see from the record, did he argue that his statements were an extension of his invocation. Your Honor, I agree with you that that is a factual point. But the reason that it shouldn't preclude the court from recognizing what is an obvious and severe error and one that really goes to the heart of what the Fifth Amendment is about is first that it wasn't that the defense was trying to sandbag this or even that the defense knew that this issue existed until the hearing happened. But at the conclusion of the hearing, we just simply... and then came up with an 18-page decision that analyzed this issue and denied it, but denied it on an erroneous basis. But then why didn't you make the argument after you got the court's decision? Well, you know, would it have been better to have done that? Of course it would have been better to do that. That's a different... Well, the question was, is it fatal if you didn't? Well, I guess I disagree with that because... I'm asking it. The reason I disagree with that is that once the judge makes a decision, there's nothing in Rule 12 or anyplace else anywhere that says that you have to make a motion for reconsideration. Well, U.S. v. Murillo. Well, U.S. v. Murillo is a completely different case because... Well, it's the same principle. Well, I disagree it's the same principle, and the reason is that in Murillo... Murillo is a case where the defense moves to suppress evidence based on its being outside the scope of the warrant. And then an appeal raises an entirely different ground, which is that they claim that there wasn't probable cause to seize the car. This is not the same thing. The court stated in Murillo that moving to suppress evidence on some ground does not suffice in order to preserve a specific suppression issue for appeal. The defendant must move to suppress evidence on that particular ground before the district court. Failure to do so places the issue beyond this court's review. That's at page 1135 of the Murillo decision. How is that different? Well, it's different because Murillo is analyzing a situation where there are just two different claims. Here we're talking about the same amendment, the same facts, the same statements. And what's going on here is that the defense before the hearing doesn't realize that this issue exists because they're claiming that the problem was that he was being interrogated after he had asserted his rights. Okay, thank you. Okay, thank you. May it please the Court. T.L. Miller on behalf of the United States. There is no way around the Rule 12 waiver in this case. There was no surprise about Agent Beard's testimony on our response to the motion to suppress, which is at SCR 9. The government alerted the defense that Agent Beard would testify. After asking for counsel, defendant volunteered two statements and then gave the statements that Agent Beard testified to at the suppression hearing. The one case that might give the defendant a pathway to having her on appeal is Flores Montano, right? I disagree, Your Honor. I want your response as to why that doesn't support appellate jurisdiction. Of course, Your Honor. Footnote 2 of Flores Montano says, we do not address the government's argument under Rule 12b-3 that a ground is waived if not made before trial. And what that means is Flores Montano was actually not considering Rule 12 waiver but rather ordinary waiver. And the difference between Rule 12 waiver and ordinary waiver, which is reviewable for plain error, is that Rule 12 requires a suppression motion to be made before trial because it's before jeopardy attaches. And it can be appealed and considered. If you wait to move to suppress until the trial and then the district court rules, yes, this evidence should be suppressed, and the defendant is found to be not guilty, there's no review of that suppression decision. And that's why suppression decisions are in one of the categories under Rule 12b of motions that must be made before trial. I thought there were some exceptions under Flores Montano, exceptional exceptions. But, again, those are in the discussion of an ordinary waiver and plain error. They're not applicable to Rule 12 waiver. And Murillo is the case there, and it says you must establish good cause. And the only argument I've heard this morning for good cause, Your Honor. Don't you think under the Murillo good cause standard, you could read that as incorporating the three exceptions that Montano lists? Murillo doesn't say as much, Your Honor. And, again, there are different reasons for the ordinary principles of waiver and Rule 12 waiver. And in any event, there isn't good cause in this case. There was no effort to establish good cause after the district court ruled on the suppression motion. Judge Carney, your question recognized that. There was no attempt to establish good cause in the opening brief on appeal either. And there is no good cause. As I said, defendant was aware before the suppression hearing of what Agent Beard's testimony would be. After asking for counsel, defendant volunteered two statements. Well, let me ask the question this way, then. You are entirely correct, you know, that Montano has this footnote, footnote 2. In fact, that footnote specifically cites a Murillo, right? Yes. And Wrighton. For the Rule 12 ruling. Yes. And Restrepo Rua. You know, it's a, meaning Montano, I mean, it's an appeal from a suppression hearing. Now, why doesn't Rule 12 apply to that? The difference is that, and I'm sorry, Your Honor, I should have said this. Flores Montano is a guilty, a conditional guilty, an appeal from a conditional guilty plea. So no trial has taken place. No, but they preserve the, right, they preserve the right to appeal the pretrial ruling. That's right, Your Honor, but the only way to understand that footnote, which is we're just not going to consider whether 12E applies, is this is still before trial. Whereas in our case, we're not before trial. A trial took place. You know what concerns me is it just seems so obvious that the statement was protected. And I really didn't understand the way it was set up going into trial. It was inviting a disaster. There was no way you were going to keep out his first statement, I better talk to a lawyer, within the explanatory refusal. You're going to have to present that statement to the jury so they can understand, well, when he said they're going to hurt me or my family, where did that come out of? Well, Your Honor, he did make two statements. And I think that the second statement, the argument from our point of view, is very strong that that wasn't an explanation of the invocation of the right to counsel. The second statement is he doesn't know much. But wasn't it, it was immediately in response to the agent's clarifying question after the statement. So in sequence and time, I mean, I think they were inextricably linked. I just don't see how you could sterilize and keep them out. It's not a situation where the statement's made 20 minutes, 30 minutes later in the back of a police car after the suspect has been arrested. Well, that question actually is exactly why waivers should apply in this case. The factual record wasn't developed as to the link. And if you look at page 52 of the excerpts of record, what you'll see is that Agent Beard testified that the defendant first waived his Miranda rights. Agent Beard then said, I'm going to tell you the evidence we have against you. I'm going to tell you what we know about this conspiracy. At that point, the defendant said something sort of equivocal about counsel, and Agent Beard asked a clarifying question, which he's allowed to do under Davis, to see whether are you actually invoking your right to counsel. And then what Agent Beard testified was he indicated in a way that he did want an attorney. We don't know whether he shook his head, whether he said yes, whether he said yes and then he made the statement. There actually is factual ambiguity here as to whether these statements could be separated and whether there was separation. We know that the first statement and the second statement were separate sentences at least. And we don't know. We know it happened within seconds of each other, right? I just don't see how you can parcel some statements, say the jury's not going to hear about them all. I think for context, they have to hear how the discussion or conversation went. Well, I don't think that's right, Your Honor. I think that the district court could have ruled, for example, if this issue had been presented, the district court could have ruled, I'm keeping out the second statement, but I'm going to allow Agent Beard to testify that he said he doesn't know much, no names, and he stated that he would like to help out but can't, none of which refers to invocation of his right to counsel, none of which would tread on that right in any way. But it was in response to the clarifying question by the agent. Well, the first statement, we're not sure about that again. Again, there is factual uncertainty here. If you look at 52, ER 52, he indicated in a way that he did. How did he indicate that? We don't know. And immediately he stated, and then he said. So Agent Beard was saying these are three events. They happened close in time. I absolutely agree from what we know from the record that they happened close in time. But that doesn't mean they're all protected under the due process interest in sort of your reliance on your Miranda warning, because Edwards against Arizona, Burgess against Thompson, the Supreme Court's 2010 case, make very clear that even a defendant who has either invoked his rights or stood on his rights and then voluntarily starts talking, that those statements can be used against you. You can sort of revoke your invocation of your rights. And a defendant who, what happened here, I think, one view of it, and we don't know because there's no factual finding and no legal analysis from the district court, but one view of it is that he nodded his head. He said, I can't talk because my son will be killed. And he paused for a minute and he tried to exonerate himself. He tried to minimize his involvement by saying, I don't know much. That's a separate thought. That thought can come in. Or at least the district court should have ruled whether that thought could come in before we went to trial. Well, but the district court did find that those statements, they immediately followed his explicit invocation of his right and they were offered to explain his invocation. Well, if you look at page 44 of the excerpt, later on, on that same page, at line 22, the district court was addressing a different question when it answered that question. It was resolving the conflict between defendant's testimony, which is that Agent Beard told him to come clean before he said anything. The defendant's view was that this was, it was not voluntary because he was questioned. And Agent Beard said no. He stopped questioning, but he asked a clarifying question. Then the district court makes the comment that this was an explanation of his rights. Without analyzing, are they both an explanation of his rights and why he said that? And, of course, if he had actually analyzed that question, he would have told us, but I'm not suppressing on that ground because I see them as separate statements, or he would have suppressed on that ground. Then if you look at line 22, under Agent Beard's accounts, defendant's statement was made. I'm sorry. Where? Where are you? I'm at ER44, line 22. Okay, go ahead. Under Agent Beard's account, defendant's statements were made, not in response to further interrogation, but he immediately after defendant invoked his right to counsel on the questioning, stopped. That sounds voluntary. And, in fact, that's what the district court said. That's in us. No, but that also tells you, doesn't it, it's part of the invocation? No, it's after the invocation. It's immediately after, but it's after. Let me ask you, if we opt for a plain error review, what's your response to that? My response is that you should still affirm the judgment because the critical three different witnesses said that the defendant was the driver who brought the marijuana into the Kent warehouse and operated the trap in the truck and therefore knew what was inside of it. And defendant's response to that is, well, they were all cooperators and they had time to coordinate beforehand. The record actually contradicts that. If you look at page 200 of the supplemental excerpts, witness Eric Gross says that the first time he met with the government, he told them the driver's name was Jim and told them how the trap worked. But didn't the prosecutor in closing arguments say this was the key piece of evidence that sealed his link to the conspiracy? Yes, Your Honor. The prosecutor did emphasize this evidence. This evidence was certainly damning. There's no question about that. But there was lots of other damning evidence, too. Thank you very much. Excuse me. I'll give you one minute. Thank you. I'd just like to point out first, as Judge Sesim observed, Flores-Montano is a suppression case. It does offer a basis for reviewing it. In terms of plain error, this is a constitutional violation. And, in fact, the evidence was quite weak against Mr. Postlewaite, other than this statement. This was a case where there had been an extensive investigation. There was never any evidence during any of that investigation that Mr. Postlewaite was smuggling marijuana. When he was stopped, he was in a truck that didn't have a secret compartment. There were no drugs on him. There was no money. When Your Honor observed that the prosecutor said it was the key piece of corroborating evidence, it's because it was. It was a devastating statement. And the most devastating statement was the one about, if I talk, they'll kill my son, which even the government admits was a clear violation of Bushy Head. Thank you. Thank you. Thank you very much for your arguments today. It's very helpful. The case is now submitted.
judges: Carney, TASHIMA, MURGUIA